# GRAND TRUNK WESTERN RAILWAY COMPANY *v.* POOLE.

[No. 21,508.   Filed November 29, 1910.   Rehearing denied May 18, 1911.]

1. MASTER AND SERVANT.—*Railroads.—Defective Couplers.—Defective Frogs.—Assumption of Risk.—Contributory Negligence.—Complaint.*—A complaint by a railroad brakeman alleging that defendant railroad company ordered plaintiff to couple a loaded car equipped with a defective coupler to a standing car, that both parties knew of the defect, that while said car was in motion plaintiff was required to go in front thereof to do such work, that it was defendant's custom, in the yard where such switching was done, securely to block all frogs, that defendant negligently permitted one to become defective, the plaintiff having no knowledge thereof, and that while plaintiff was making such coupling, and while in the exercise of due care, his foot was caught in such defective frog and he was thereby thrown under the moving car, to his injury, shows neither an assumption of the risk, nor contributory negligence, and is sufficient. p. 571.

2. MASTER AND SERVANT.—*Railroads.—Defective Couplers and Frogs.—Complaint.*—A paragraph of complaint by a brakeman sufficiently stating a common-law cause of action for injuries received because of a defective frog into which plaintiff stepped while trying to couple a standing car, and a moving car equipped with a defective coupler, is not bad because it further alleges that such coupler had other defects contributing to plaintiff's injury, nor because it contains other allegations showing a violation of the federal safety appliance law (27 Stat. p. 531). p. 572.

3. MASTER AND SERVANT.—*Railroads.—Making Dangerous Coupling.—Other Safe Way.—Interrogatories.*—In an action by a brakeman for injuries received in making a coupling by walking in front of a moving car equipped with a defective coupler, a verdict for plaintiff will not be overthrown by answers to interrogatories, where defendant's contention that there were available and specified safe methods of making the coupling, was met by the jury's answer that such methods were "always dangerous." p. 573.

4. MASTER AND SERVANT.—*Assumed Risks.—Instructions Covering.—Repetition of.*—In an action by a servant for personal injuries, it is unnecessary, where an explicit, correct instruction is given on the question of assumed risk, to repeat such statement of the law in other instructions. p. 573.

5. MASTER AND SERVANT.—*Railroads.—Federal Safety Appliance Statute.—Violation.—Instructions.—Evidence.*—In an action by a brakeman, the complaint alleging, among other things, a breach of the federal safety appliance act (27 Stat. p. 531), correct instructions given thereon are not prejudicial, where there was some evidence of such a breach of duty. p. 574.

6. MASTER AND SERVANT.—*Railroads.—Coupling Cars.—Custom.—Instructions.*—In an action by a brakeman for injuries sustained in walking in front of a moving car while attempting to make a coupling, the complaint alleging a custom so to do, an instruction that if the evidence showed a general custom in doing such work at such place in such a manner, of which defendant knew, or should have known, and in which defendant acquiesced, it would be competent to consider such fact along with the others, is too favorable to defendant, ordinary care only being required, the ordinary method of coupling being the standard. p. 574.

7. MASTER AND SERVANT.—*Coupling Cars.—Custom.—Evidence.*—In an action by a brakeman for damages for injuries received in walking in front of a slowly-moving car in order to couple it to a standing car, such moving car being provided with a coupler so defective that the brakeman was required to go between the cars to make the coupling, evidence of a custom so to couple cars was competent in favor of plaintiff. p. 575.

8. MASTER AND SERVANT.—*Railroads.—Coupling Cars.—Negligence.—Proximate Cause.—Instructions.*—In an action by a brakeman against defendant railroad company for damages for injuries sustained in coupling cars, an instruction that "negligence may be the proximate cause of an injury of which it is not the sole or immediate cause," and that if defendant was negligent in either particular as alleged, and such negligence concurred with another cause or causes in producing the plaintiff's injury, such negligence would be a proximate cause thereof, does not deny to the jury the right to determine the proximate cause of such injury. p. 575.

9. MASTER AND SERVANT.—*Railroads.—Frogs.—Instructions.—Contributory Negligence.*—In an action by a brakeman for damages caused by a defective frog in which his foot was caught while he was walking in front of a moving car having a defective coupler, and trying to couple it, instructions virtually stating that the plaintiff was guilty of contributory negligence because he knew that such frogs, whether blocked or unblocked, were dangerous, were properly refused, the test being whether a person of ordinary prudence would have undertaken to do the work under the circumstances. p. 576.

10. MASTER AND SERVANT.—*Railroads.—Foreign Cars.—Inspection of.—Safety Appliance Acts.—Instructions.*—In an action by a

brakeman for injuries sustained because of a defective coupler on a foreign car, based upon the federal safety appliance act (27 Stat. p. 531), instructions as to the common-law duty of carriers to inspect foreign cars, are irrelevant. p. 576.

11. MASTER AND SERVANT.—*Railroads.—Defective Couplers.—Notice.—Safety Appliance Act.—Instructions.*—In an action by a brakeman for injuries caused by reason of a defective coupler on a foreign car, an instruction that if the defect was not such as reasonably to give defendant notice of danger to its employes, no recovery could be based thereon, was properly refused, since under the most favorable view toward defendant, the matter would be a question of fact for the jury, not one of law for the court. p. 576.

12. MASTER AND SERVANT.—*Railroads.—Defective Couplers.—Instructions.*—In an action by a brakeman for injuries sustained because a coupler had no cotter pin, an instruction that there was no evidence to charge defendant railroad company with knowledge of the absence of such pin, was correctly refused, the operation of a car having no such pin constituting *prima facie* negligence, and the burden of proving excusing facts being upon the defendant. p. 577.

13. MASTER AND SERVANT.—*Railroads.—Couplings.—Unsafe Methods of Making.—Instructions.—Interrogatories.*—In an action by a brakeman for injuries sustained in walking in front of a moving car to make a coupling, the car being equipped with a defective coupler, the refusal to give instructions on the theory of making the coupling in an unsafe way, when a safe way was available, was not prejudicial, where the answers to the interrogatories to the jury showed that the suggested safe ways were also dangerous. p. 577.

14. MASTER AND SERVANT.—*Railroads.—Automatic Couplers.—Defects.—Instructions.*—In an action by a brakeman for injuries sustained because of an alleged defective coupler, an instruction that the car in question was provided with an automatic coupler in accordance with the provisions of the federal statute (27 Stat. p. 531), was properly refused, where the car would not couple by impact unless the coupler was previously adjusted by hand. p. 577.

15. MASTER AND SERVANT.—*Railroads.—Defective Couplers.—Evidence of Instructions.*—In. an action by a brakeman against a railroad company for injuries sustained while walking in front of a moving car in making a coupling, the car being equipped with a defective coupler, evidence of any instructions given by the defendant in reference to the method of doing such work is competent. p. 577.

16. MASTER AND SERVANT.—*Railroads.—Couplings.—Safe Methods of Making.—Interrogatories.*—In an action by a brakeman for injuries sustained while walking in front of a moving car to make a coupling, the car being provided with a defective coupler, and the engineer being required to obey signals from the plaintiff and also from the yard foreman, the refusal of the court to order the jury to answer affirmatively or negatively, interrogatories asking whether there were not other safe ways of doing such work, is not prejudicial, the answer "Always dangerous," which was given in each case, being equivalent to a negative answer. p. 578.

17. TRIAL.—*Interrogatories.—How Framed.*—Interrogatories should ordinarily be so framed as to admit of a direct answer of "yes" or "no." p. 579.

18. MASTER AND SERVANT.—*Railroads.—Defective Couplers.—Unblocked Frogs.—Contributory Negligence.—Evidence.*—Evidence that the plaintiff walked in front of a slowly-moving car equipped with a defective coupler to make a coupling, that the frogs in defendant's track were blocked, to plaintiff's knowledge, that a block in one thereof had rotted, and that plaintiff, being ignorant thereof, stepped therein and was injured by the moving car, the engine attached to which was under the joint control of plaintiff and the yard foreman, warrants a verdict for the plaintiff. p. 579.

From Laporte Circuit Court; *John C. Richter*, Judge.

Action by David N. Poole against the Grand Trunk Western Railway Company. From a judgment on a verdict for plaintiff for $11,500, defendant appeals. *Affirmed.*

*Anderson, Parker & Crabill, S. J. Crumpacker* and *Kretzinger, Rooney & Kretzinger*, for appellant.
*Slick & Slick* and *Travis & Irwin*, for appellee.

MONTGOMERY, J.—Appellee recovered a judgment for a personal injury sustained while in appellant's service, on account of its alleged negligence. His complaint was in three paragraphs, and, demanding our first consideration, are the alleged errors in overruling demurrers to each of such paragraphs.

It is alleged in the first paragraph of the complaint that appellee entered appellant's service as a switchman at 6

o'clock a. m. on October 8, 1906, and was injured in the Oliver yards at South Bend about 8:30 o'clock a. m. of that day; that appellant had in said yards four side-tracks south of the main track and connected by a "lead" track; that it became appellee's duty to couple a loaded car, which was being moved along said lead track at the rate of two miles an hour, to a car standing on side-track number two; that the cars were equipped with automatic couplers, but the pin of the coupling on the forward end of the loaded car had been pulled from its socket, and could not be replaced by means of the lever; that it was necessary for appellee to go in front of said car and replace the pin in its socket and adjust the coupling by hand, so that the cars would couple automatically; that appellee stepped in front of the moving car for the purpose stated, and while walking along, absorbed in the work of replacing the pin and adjusting said coupling, and in the exercise of due care, the shoe on his left foot caught in a frog formed by the converging rails at the south side of side-track number two, and while trying to extricate his foot from said frog he was struck by the moving car, thrown under its wheels, run over, and thereby injured.

It is alleged that appellant knowingly, negligently and carelessly permitted the blocking in said frog to be and become so worn and rotten that only a small piece of wood about six inches in length remained, which was wholly unsuitable and inadequate to block said frog, and to keep the feet of employes from becoming fastened therein; that said piece of wood was not nailed nor fastened, but lay loose in said frog, and appellee's foot was caught, and he was thrown and injured by reason of the fact that said frog was improperly, defectively and inadequately blocked, as aforesaid.

It is further alleged that it had been and was appellant's custom and practice to block all frogs upon its lines, switches and side-tracks, which fact was known to ap-

pellee, and relied on by him at the time he entered appellant's service, and was injured; that prior to his injury he had no knowledge of the defective blocking of said frog, but that appellant knew of the defective and dangerous condition of said frog in time to repair it before this accident, but negligently failed and omitted to do so.

Appellant challenges the sufficiency of this paragraph, claiming that it discloses contributory negligence, or that appellee's injury was the result of a risk assumed by him.

Appellee avers, in general terms, that he was in the exercise of due care when injured, and the particular facts alleged do not contradict this averment. It is well settled that contributory negligence must affirmatively appear on the face of the complaint, to justify the sustaining of a demurrer thereto for such cause.

It is alleged that it was the custom and practice of appellant to block all of its frogs, which fact was known to appellee, and that he had no knowledge of the unsafe condition of the frog in question, and, relying on such custom and practice, and being absorbed in the performance of his duties, he did not discover the defect that caused his injury. These allegations were abundantly sufficient to repel any claim that the accident was the result of an assumed risk. Appellant's objections to this paragraph are untenable, and its demurrer was correctly overruled.

The second paragraph contained all the allegations of the first, and further alleged that appellant negligently permitted the coupling on the forward end of the 2. moving car to be and remain in a non-automatic, inoperative and defective condition, in that the cotter pin, which fits into the lower end of the coupling pin, and prevents it from pulling out of its socket, was lost, so that it was necessary, in order to operate said coupling, to go in front of said car and replace said coupling pin and adjust the coupling prior to each impact.

The third paragraph of complaint contained all the alle-

gations of the first, and, in addition, alleged a breach of the federal statute, making it unlawful in moving interstate traffic for an interstate carrier to permit a car to be used which is not equipped with couplers, coupling automatically by impact, and which can be uncoupled without the necessity of going between the cars. 27 Stat. p. 531.

The first paragraph having been held good, it is manifest that for the same reason, as well as other reasons, the second and third paragraphs were properly held sufficient.

The jury with the general verdict returned answers to a number of interrogatories, and appellant moved for judgment in its favor on the interrogatories and answers

3. thereto, notwithstanding the general verdict. This motion was overruled and this ruling assigned as error. It is urged in this connection that appellee was guilty of negligence in attempting, in a dangerous manner, to adjust the coupler, when he might have adopted another and safe way. This contention is not sustained by the special findings of the jury. It is specifically found that appellee, when injured, was performing his work in the manner usual and customary in appellant's Oliver yards, and that the other way suggested, in which the coupler might have been adjusted, was "always dangerous." The answers to interrogatories do not contradict the general verdict, and appellant's motion for judgment was rightly overruled.

A new trial was sought on the grounds of error in giving and in refusing to give certain instructions, in the admission and rejection of certain evidence, in not requiring the jury to make fuller and more specific answers to certain interrogatories, and because the verdict is not sustained by sufficient evidence and is contrary to law.

Instruction two is attacked because the element of assumed risk is not included. The law upon the subject

4. of assumption of risk was fully and correctly covered in instruction five, given at the request of appellant. The

court is not required to embody in a single instruction every legal proposition applicable to the case, but it is sufficient if the instructions as a whole correctly advise the jury upon the law.

Complaint is made of the giving of instructions five, eight and nine, at appellee's request. These instructions were addressed to the question of liability for a violation of the federal statute requiring automatic couplers.

5.

The third paragraph of complaint declared upon a breach of this statute. There was evidence making the giving of such instructions proper, and taking the instructions together they accurately and fully express the law upon the proposition to which they relate.

The court advised the jury that if the evidence showed the existence of a general practice in appellant's Oliver yards, at the time of, and for several years prior to this accident, of employes' going in front of slowly-moving cars to adjust couplings, of which appellant knew, or in the exercise of ordinary care ought to have known, and in which it knowingly acquiesced, and which practice appellee knew and relied upon, it would be competent to consider such general practice in connection with other facts and circumstances in evidence in determining whether appellee was guilty of contributory negligence at the time he received his injury.

6.

The instruction was unduly guarded. Its statements were more favorable to appellant than the applicable rule of law required. Appellee, in the discharge of his duties, was held to the exercise of only ordinary care, or that degree of care and watchfulness which men of ordinary prudence usually exercise for their own safety in similar circumstances. The manner in which other railroad men of reasonable prudence were accustomed to adjust couplers on slowly-moving cars, provided such practice was not manifestly negligent, would fix the standard by which appellee's conduct must be tested. This would be true even in the absence of knowledge of such

custom by either appellant or appellee. Evidence of a practice in accord with appellee's conduct was competent, and this instruction was relevant and proper. *Pittsburgh, etc., R. Co.* v. *Nicholas* (1906), 165 Ind. 679; *Pennsylvania Co.* v. *McCormack* (1892), 131 Ind. 250, 257; *O'Mellia* v. *Kansas City, etc., R. Co.* (1893), 115 Mo. 205, 21 S. W. 503; *LaBarre* v. *Grand Trunk, etc., R. Co.* (1903), 133 Mich. 192, 94 N. W. 735; *Weed* v. *Chicago, etc, R. Co.* (1904), 5 Neb. (Unofficial) 623, 99 N. W. 827; *Louisville, etc., R. Co.* v. *York* (1900), 128 Ala. 305, 30 South. 676; *Pioneer Fire Proof, etc., Co.* v. *Sandberg* (1900), 98 Ill. App. 36.

Instruction twenty, given at appellee's request, reads as follows: "Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. If you find from the evidence that defendant was negligent in either particular alleged in the complaint, and that said negligence in that particular concurred with some other cause or causes in bringing about and causing plaintiff's injury, the defendant's said negligence would be a proximate cause, within the meaning of that term as used in these instructions." Appellant contends that this instruction denied to the jury the right to determine the proximate cause of appellee's injury. This instruction cannot fairly be so interpreted, and is not erroneous. *Billman* v. *Indianapolis, etc., R. Co.* (1881), 76 Ind. 166, 40 Am. Rep. 230; *Cleveland, etc., R. Co.* v. *Wynant* (1893), 134 Ind. 681; *Board, etc.,* v. *Mutchler* (1894), 137 Ind. 140; *Chicago, etc., R. Co.* v. *Pritchard* (1907), 168 Ind. 398, 9 L. R. A. (N. S.) 857; 29 Cyc. 496, 497.

Instruction twenty-four, relating to the assessment of damages, of which appellant complains, is almost a literal copy of one approved in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 26, 69 L. R. A. 875, 71 Am. St. 300.

The court refused appellant's tendered instructions two and five, which were so drawn as to declare appellee guilty

of contributory negligence, because frogs, both blocked
9.  and unblocked, were known to him to present elements
of danger to a person walking in front of a moving
car.  Almost every act of operative railroading presents
elements of known danger to the employe in such service,
but this fact does not make him chargeable with negligence
in undertaking such work,  The question in each case is
whether the particular act involved was attended with such
manifest or known danger that a person of ordinary prudence
should not have attempted its performance under existing
circumstances.  The proffered instructions were properly re-
fused, and the question whether appellee was guilty of con-
tributory negligence in this case was not one of law for the
court, but one of fact for the determination of the jury, in
the light of all the evidence, and the instructions of the court
upon that subject.

Appellant's instructions seven and eight related to its
duty to inspect foreign cars.  These instructions might have
been relevant and proper in a common-law action,
10.  based on a defect in a foreign car, but the paragraphs
of appellee's complaint involving the defective coupling ·
on a foreign car were founded on the specific provisions of
state and federal statutes, imposing upon appellant an im-
perative duty to use no car, regardless of ownership, unless
equipped with automatic couplers in normal working condi-
tion.  The tendered instructions were clearly irrelevant.

Instruction nine, requested by appellant, sought to charge
that the defect in the coupler shown in this case was not
such as reasonably to give appellant notice of danger
11.  to appellee in the performance of his duties, and that
no recovery based on such defect could be had.  In
the most favorable view to be taken of the proposition ad-
vanced, the question was not one of law, but was properly
submitted to the jury for decision, and this instruction was
rightly refused.

Appellant's instruction ten declared there was no evidence

to charge it with knowledge of the absence of the cotter pin, and hence no proof of negligence in failing to make proper repairs. The showing of a defective coupler in use in violation of statutory requirements constituted a *prima facie* case of negligence, and if the exercise of any degree of care would excuse the use of the coupler without such pin—a question we are not called upon to decide—the burden of showing the extenuating facts rested on appellant. This instruction proceeded upon an erroneous theory, and was properly refused.

Instructions eleven to twenty-one, inclusive, and twenty-four, tendered by appellant, purported to state the law with regard to the choice of an unsafe way to do work, when a known safe way was equally available. A consideration of these instructions is unnecessary, in view of the special finding of the jury, that the suggested safe ways were "always dangerous." *Pittsburgh, etc., R. Co.* v. *Collins* (1907), 168 Ind. 467; *New Castle Bridge Co.* v. *Doty* (1907), 168 Ind. 259; *City of Muncie* v. *Hey* (1905), 164 Ind. 570; *Baltimore, etc., R. Co.* v. *Harbin* (1903), 160 Ind. 441; *Roush* v. *Roush* (1900), 154 Ind. 562.

Instruction twenty-five, tendered and refused, declared, as a matter of law, that the car in question was equipped with an automatic coupler, in accordance with the requirements of the federal statute. It was shown, without dispute, that the coupler would not couple by impact, without previous adjustment by hand. This condition was not in accord with the manifest purpose and requirements of the law, and the instruction was erroneous.

Appellee, as a witness, was asked whether before receiving his injury, and on the same morning, appellant's foreman and yardmaster, Kellogg, instructed him with reference to going in front of moving cars, or going between moving cars to adjust defective couplers, and he answered in the affirmative. He was then asked to relate

what Kellogg said to him on this subject. Appellant's objection to the question was overruled. Appellee's insistence is that he was adjusting the coupler, in conformity with instructions, at the time he was injured. He had entered upon his duties as switchman but two hours before he was injured, and it was certainly competent for either party to prove what, if any, instructions had been given him touching the manner of performing the duties assigned to him. The objection was correctly overruled. *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, 198; *Rogers* v. *Overton* (1882), 87 Ind. 410.

The jury in answer to an interrogatory found that after opening the switch to track number two, appellee could have signaled the engineer to stop, and after the engine and cars had stopped he could have gone in front of the car in question and replaced the pin in the coupler.

The jury was asked in various forms whether this could have been done by appellee with safety to himself, and the answer in every instance was, "Always dangerous." Appellant requested the court to require the jury to answer specifically "Yes" or "No," but its request was denied, and complaint is made of this ruling. The jury found that the engineer in charge of the engine at the time of the accident, in distributing cars about the yards, was controlled and directed as to the movements of the engine by signals from appellee, and also by signals from Kellogg, the yardmaster. It was further shown that said yardmaster was present at the time of the accident, giving signals concurrently with appellee. The answer of the jury is responsive to the questions propounded, and is equivalent to a simple "No." The query was, Could appellee have done the suggested act with safety to himself? and the response was, "Always dangerous." The clear meaning of such answer was, "Not with safety to himself," or "No." If the interrogatory had been made sufficiently comprehensive to . insure the engine's remaining

stationary while the coupler was being adjusted, a different answer would have seemed proper, but under the circumstances shown, the thought in the minds of the jurors doubtless was that the engine was liable to move at the signal of the yardmaster, at any moment, making it dangerous to go in front of the cars to which it was attached. Interrogatories should ordinarily be so framed as to admit of a direct answer of "Yes" or "No;" but we cannot say that the court committed harmful error in refusing to require such answers to the interrogatories under consideration. *Fort Wayne Cooperage Co.* v. *Page* (1908), 170 Ind. 585; *Salem-Bedford Stone Co.* v. *Hilt* (1901), 26 Ind. App. 543.

The legality of the verdict is challenged on the ground that it is not sustained by sufficient evidence. Appellant insists that appellee was guilty of contributory negligence in trying to adjust the coupler on the front of a moving car, when it was approaching a frog and other obstructions known to him to be in the track. Cases are cited in which the court held the injured party negligent as a matter of law, but they are readily distinguishable from this one. In some of them a rule of the company prohibited an employe from going in front of a moving car in the performance of his duties, and this rule was violated without the knowledge or consent of the company; and in other cases the complaining employe had exclusive control of the movements of the engine, and voluntarily undertook to do his work in an unusual and manifestly dangerous way, when he could have pursued a known practical and safe way. Appellee's conduct in this case must be viewed and judged in connection with appellant's alleged negligence. Appellant had undertaken to block all the frogs in its yards, and appellee knew and relied upon this fact. A blocked frog may not be wholly free from danger, but we cannot say that this accident would have happened as it did if the blocking had been properly done, or had been in good condition. The evidence showed that

the blocking was rotten and in bad condition, and that, because of its apparent security, it was likely to be more dangerous than it would have been had it been known to be wholly unblocked. The engineer was not subject to the exclusive control and direction of appellee. In view of all the attendant facts and circumstances, the question of contributory negligence was rightly submitted to the jury for determination, and we cannot say that its conclusion was not warranted by the evidence.

The motion for a new trial was correctly overruled, and the judgment is affirmed.