BLUFORD BYBEE v. E. WADLINGTON.

(No. 3701.)

SUIT ON PROMISSORY NOTE.— An abandonment of a pre-emption right is a sufficient consideration to support a promise to pay a note given to induce the abandonment.

FAILURE OF CONSIDERATION.— The production of a note and its acknowledgment on its face that it was given for value received establishes, *prima facie*, that it is founded on sufficient consideration.

WRIT OF ERROR from Williamson county. Opinion by WALKER, P. J.

STATEMENT.— Plaintiff in error sued defendant in error on the 1st of December, 1876; on a promissory note executed by defendant to plaintiff for part purchase money for tract of land described in petition. In an amended petition it was alleged that Joseph Bond settled on the land in June, 1870; had it surveyed and field-notes returned to general land office; that he occupied it until August 23, 1873, and sold it to Wm. J. Bybee, who, in September, 1873, sold to defendant in error, and who executed his note for the purchase money to John Bybee. He transferred it to plaintiff in error, who had defendant renew it, substituting plaintiff's name as payee and expressly retaining the vendor's lien. That at the time defendant purchased, the land had not been patented, and that defendant knew the condition

of the title. When the suit was filed the land was patented to defendant upon a survey made for him.

The defendant presented three issues: 1st. A general denial. 2d. That plaintiff was not the owner of the note, but held it in trust. 3d. The consideration had failed for the reason that plaintiff in error had no title and could make none; that the land was public domain and had been located by defendant and patented to him. Tried before court and judgment rendered for defendant

OPINION.— Under the issue in this case, a want of consideration for the note sued on, the burden of establishing it devolved upon the defendant. The production of the note established *prima facie* that it was founded on a sufficient consideration, and it acknowledged that it was given for value received on its face. That the consideration was for a tract of land which the said W. J. Bybee had sold the defendant is admitted. If any valuable interest in said land was sold to the defendant under this contract, there would not be a total want of consideration for the defendant's promise. The vendor was in possession of the land, claiming to own it, and this possession he yielded to the defendant under circumstances whereby he lost an unquestionable right as an actual settler to hold the land as against every other person, and to obtain a patent for it. This was at least a loss to him. The defendant acquired thereby for his advantage that precise benefit in his favor by reason of such surrender. That surely would have been a valuable consideration to support a promise to pay something to the vendor if his mere right to the possession alone of the land had been the subject of the contract. In Palmer *v.* Chandler, 47 Tex., 335, it is said that such an abandonment of a pre-emption right would be a sufficient consideration, perhaps, to induce the abandonment by one who wished to succeed to his rights. A pre-emptor who has so far complied with the terms and conditions prescribed by the law as to entitle him to demand and receive a pat-

ent has a vested right to the land, and might, therefore, convey it. If he had such a title, therefore, as would enable his assignee to hold by possession, and which would entitle him as such assignee to obtain a patent therefor from the government, and the defendant, with a knowledge of the condition in which the title stood, and knowing that it would be necessary, if he desired to perfect his title, that he should proceed to comply with formal matters necessary to entitle him to a patent, if he thus purchased and went into possession of the land, and saw proper to obtain a patent through his own independent pre-emption claim, most assuredly he cannot be heard to say that there has been either a want of, or failure in, the consideration.

He bought under laws which fully recognized his right to succeed as assignee to the rights to which Bond or Bybee would have been entitled if they had continued on the land and perfected the title to a patent; he bought with reference to the then existing state of the title; and he knew that the law imposed upon him the duty of making the required proof of occupancy by his own affidavit corroborated by the testimony of two other persons. He knew that to be required when he received from Bybee the possession of the land. It is to be fairly implied that he agreed on his part to do what was necessary to obtain a patent; and if he saw proper to take an opposite course by discarding the valid title he had acquired, he will not be listened to by a court of equity when he asks to be relieved from paying the money which he had promised to pay to enable him to get possession of the land. See Statutes 1866, P. D., art. 7058.

His land had been duly surveyed in 1869, the field-notes were properly returned to the county surveyor and re-corded, and were filed in the general land office, marked filed April 4, 1873. Bond had occupied the land more than three years when he sold it to Bybee. Under these facts a case is made, *prima facie*, that the defendant acquired a good title with the possession of the land. The testimony

is, too, that the requisite proof was furnished to Wadlington to enable him to procure the patent by the necessary affidavits to be filed with the commissioner of the land office.

The defense relied upon has signally failed. If for any assignable cause Wadlington could not have procured a patent for want of merits in Bond's pre-emption claim, he has not shown in what the objection consists; and it must be held, under the circumstances and nature of the contract, and the subject-matter of it, that the title was apparently a good one, and the burden lies on the defendant to establish the contrary.

But it is urged by counsel that Bond was a single man, and admitting he would only be entitled to eighty acres, the failure of consideration would only be partial, and he would be entitled to eighty acres and his improvements, and Bybee would be entitled to a lien upon eighty acres as against defendant. But the interpretation given by the supreme court to the term "head of a family," in its relation to questions involving the homestead law, justify us in saying it is by no means clear that a married son managing a household and assuming the care of its affairs, when composed of an aged parent and dependent infant nephews, is not, in the sense of the law, the head of a family. See Whitehead v. Nickelson, 48 Tex., 517; Howard v. Marshall, 48 Tex., 475; Roco v. Green, 50 Tex., 483; Wolf v. Buckley, 52 Tex., 641. If, however, it had been true that Joseph Bond had not legally been entitled to more than eighty acres on account of his not being the head of a family, and that on that account a patent would not have been issued to him as the head of a family, it does not follow as a consequence that a title to the land was not, nevertheless, acquired, and would have been patented in due season if it had been applied for. The family may have had the mother of Joseph Bond for its head, and to her it would, perhaps, have been proper to grant the patent. Allen v. Harper, 19 Tex., 509. Whether to the one or the other, it did not affect the interest of defendant, and he will not be

heard to complain. Wadlington could not have acquired title to the land except by and through the assignment made to him by Bybee.

We conclude there is error in the judgment, and reverse and remand the case for further proceedings.