**SOUTHWESTERN BELL TELEPHONE COMPANY and James Cozart, Petitioners,**

v.

**Robert Richard JOHNSON, Respondent.**

No. A–10458.

Supreme Court of Texas.

March 31, 1965.

Rehearing Denied April 28, 1965.

Larry Barnes, Dallas, Wardlow Lane, Center, James E. Barden, Houston, for petitioners.

Fairchild & Badders, Nacogdoches, for respondent.

SMITH, Justice.

The plaintiff, Robert Richard Johnson, filed suit jointly against the defendants, Southwestern Bell Telephone Company and James Cozart, for damages and personal injuries sustained on December 1, 1960, when Johnson was struck by a truck belonging to Bell and driven by Cozart while in the course and scope of his employment.

Upon jury findings that Cozart was not negligent [1] in any respect, as alleged in plaintiff's petition, the trial court entered judgment that plaintiff take nothing by his suit. The Court of Civil Appeals, one justice dissenting, reversed the judgment of the trial court and remanded the cause to that court for a new trial. 382 S.W.2d 765. We reversed the judgment of the Court of Civil Appeals and affirm that of the trial court.

The issue to be decided in this Court, and the one with which the Court of Civil Appeals dealt in reversing the cause, is whether or not a trial court, in the exercise of its discretion, can refuse the testimony of a person who has not been placed under the rule after the provisions of Rule 267,[2] Texas Rules of Civil Procedure, had been invoked. Plaintiff invoked the rule before any testimony was received by the trial court, and all of the witnesses present were admonished by the Court concerning the rule.

It is necessary at this point to relate the pertinent facts which had developed when the trial court was called upon to rule as to whether or not plaintiff's investigator, Ray Blakey, a witness proffered by the plaintiff, should be allowed to testify, even though he was present when the rule was invoked, but was never placed under the rule.

Johnson was employed by the Water Department of Timpson, Texas. Cozart was

1. The jury found that Cozart did not fail to keep a proper lookout; that Cozart's failure to warn Johnson and his failure to drive to one side of Johnson were not acts of negligence. The jury did not find Cozart guilty of any negligence. The jury found that the accident was unavoidable.

2. "Rule 267. Witnesses Placed Under Rule. At the request of either party, in a civil case, the witnesses on both sides may be sworn and removed out of the court room to some place where they can not hear the testimony as delivered by any other witness in the cause. * * * Witnesses, when placed under the rule, shall be instructed by the court that they are not to converse with each other or with any other person about the case other than the attorneys in the case, except by permission of the court, and that they are not to read any report of or comment upon the testimony in the case while under the rule. Any person violating such instructions may be punished for contempt of court."

employed by Bell in the City of Timpson. The night before Johnson was injured, a small grocery store partially burned in the city. The next morning, the Water Department sent a crew of men, including Johnson, and Bell sent Cozart and others to check their respective facilities. Johnson arrived at the scene before Cozart. Admittedly, Cozart legally parked his truck. While Cozart was at the scene Johnson began working on the water meter, which was located in the ground approximately three feet in front of the truck. While Johnson was down on his knees in front of the truck, Cozart started his engine, saw nothing in front of his vehicle, turned to the left and drove forward striking Johnson.

Johnson testified that Cozart had parked his truck and then walked to a telephone pole, which was approximately six to ten feet in front of the Cozart truck, climbed the pole, and when he descended the pole he walked back to his truck, walking within a few feet of Johnson working on the water meter in front of the truck. Cozart testified that he did not climb the telephone pole nor walk within a few feet of Johnson while he was working on the ground in front of the truck. Johnson's testimony in regard to Cozart climbing the telephone pole and passing near him, no doubt, would tend to disprove Cozart's testimony that he did not see Johnson when he entered the truck and drove forward striking Johnson.

During the trial Bell and Cozart introduced a witness, Cecil Watson, who testified on direct examination that he saw the accident occur and the Cozart truck did not strike Johnson. Watson gave no testimony about Cozart climbing a telephone pole. However, on cross-examination and in response to questions propounded by plaintiff's attorney, Watson testified that he "never did see Mr. Cozart up a pole." Watson was also asked during the cross-examination if he had talked about the accident with Ray Blakey. Watson answered that he had not. Watson admitted having a conversation with Blakey about "cattle and a

little of everything," but denied discussing the case.

Plaintiff then called Blakey to testify he had obtained, without the knowledge of Watson, a voice recording of a conversation he had with Watson wherein Watson had said that Cozart did climb the pole in question. Upon objection by Bell and Cozart, the trial court refused to allow the testimony of Blakey because Johnson had invoked the rule and the witness Blakey had remained in the court room to hear other witnesses testify. The record shows that Blakey not only remained in the court room and heard testimony given by some of the witnesses, but participated in the presentation of plaintiff's case by reading the answers of certain portions of Cozart's depositions.

We interpret the Court of Civil Appeals opinion as holding that the trial court had no discretion in the matter, and that it was reversible error to deny the jury "their prerogative to determine if the voice on the recording machine was indeed Watson's." The Court cites in support of its position the case of Johnson v. Cooley (1902), 30 Tex.Civ.App. 576, 71 S.W. 34, no wr. hist., which held that "the administration of justice would be better subserved by denying to the trial court the right in any case to refuse to allow the witness to testify." The Cooley case does not hold that the trial judge was without discretion, but it does hold that the ruling of the judge was an abuse of discretion.

■ We agree that it is a serious matter to exclude any evidence that might throw light on the issues. However, we disagree with the plaintiff's position that under no circumstances may the Court, in its discretion, refuse to allow testimony where the rule has been invoked and where the proffered witness has either violated the rule, or who has not been placed under the rule. The question is not whether the action of the Court in disqualifying Blakey appears to us to have been required, but rather the question for decision is whether

the Court abused its discretion. The trial judge had the discretionary authority to take into consideration all of the facts, including the fact that the voice recording was made with the intention that it be used at the trial and with the knowledge that Ray Blakey was the only person who could identify the recording. The plaintiff invoked the rule and should have seen that Blakey was placed under rule. We cannot say that the judge, in the exercise of his discretionary power, acted arbitrarily or unreasonably in disqualifying the proffered witness, Blakey. The action of the trial court should be upheld. "The mere fact or circumstance that a trial judge may decide a matter within his discretionary authority in a manner different from what an appellate judge would decide if placed in a similar circumstance does not demonstrate that an abuse of discretion has occurred." Jones v. Strayhorn, 159 Tex. 421, 321 S.W. 2d 290 (1959).

Our disposition of the question discussed is decisive of this appeal and renders a decision on other questions presented in this Court unnecessary.

■ Even though we have concluded that the trial court did not abuse its discretion in holding that Blakey was a disqualified witness, we must, before disturbing the judgment of the intermediate court which holds otherwise, examine Johnson's brief, which he filed as appellant in that court, to determine whether there is another ground upon which the judgment of the latter court should be affirmed. See Texas Employers Ins. Ass'n v. Kennedy, 135 Tex. 486, 143 S. W.2d 583 (1940); Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W. 2d 575 (1955); McKelvy v. Barber, 381 S.W.2d 59 (Tex.Sup., 1964).

■ Johnson presented eight points in the Court of Civil Appeals. That Court sustained one of the points, overruled five, and did not pass upon the remaining two. The action of the Court of Civil Appeals in overruling Johnson's points has not been questioned in this Court. The two points which were left undecided by the Court of Civil Appeals complain of the action of the trial court in refusing to allow Johnson's attorney to lay a predicate for impeaching the witness Watson, and in refusing to grant the request of Johnson's counsel that the bailiff conduct Watson to the "witness stand without being allowed to talk to anyone." The effort to impeach the witness Watson was in connection with the unsuccessful attempt to qualify Blakey as a witness. We hold that the trial court's action was proper. The points are overruled.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

CALVERT, C. J., and WALKER, J., dissenting.

WALKER, Justice (dissenting).

I respectfully dissent. The mere fact that a witness has heard part of the evidence at the trial should not constitute a basis for excluding his entire testimony when the purpose of the rule for sequestration of witnesses has not been subverted in any way. I agree that it lies within the power of the trial court, in the exercise of a sound judicial discretion, to exclude the testimony of a witness who has violated the rule or was not placed under the rule when it was invoked. See Sherwood v. State, 42 Tex. 498; Goins v. State, 41 Tex. 334; American Automobile Ins. Co. v. Struwe, Tex.Civ.App., 218 S.W. 534 (wr. ref.); Richardson v. Herbert, Tex.Civ.App., 135 S.W. 628 (wr. ref.); Vaughn v. Gulf Ins. Co., Tex.Civ.App., 151 S.W.2d 227 (no writ). I also recognize that the action of the trial judge is not to be disturbed merely because the appellate court would have ruled otherwise in the first instance. See Jones v. Strayhorn, 159 Tex. 421, 321 S.W.2d 290.

When all of the relevant circumstances are considered in the light of the underlying purpose of the rule, however, it is my opinion that this case presents a rather

clear example of abused discretion. The practice of separating witnesses is an ancient expedient designed to prevent one witness from being taught by the testimony of another. See VI Wigmore, Evidence, 3rd ed. 1940, § 1837. As pointed out by Chief Justice McClellan in Louisville & N. R. Co. v. York, 128 Ala. 305, 30 So. 676:

> "The purpose to be subserved in putting witnesses under the rule is that they may not be able to strengthen or color their own testimony, or to testify to greater advantage in line with their bias, or to have their memories refreshed, sometimes unduly, by hearing the testimony of other witnesses; and it is legitimate argument against the veracity or fairness of a witness to say that his testimony has been developed along the lines of his inclination in the case by the opportunities he has had, from hearing the other witnesses, to refute them or to amplify his own statements to meet the exigencies of the trial."

The witness Blakey did not see the accident and was not called to establish any of the facts or circumstances surrounding the same. He was placed on the stand for the sole purpose of identifying a taped voice recording of a conversation he claimed to have had with petitioners' witness Watson. To understand the significance of the recording, it should be noted that petitioners' liability probably turns, in the last analysis, upon whether the trier of fact believes that Cozart knew, or should have known, that Johnson was working on the meter in front of the truck. There is a sharp dispute in the evidence bearing on this issue. Johnson testified that Cozart climbed a pole in front of the truck and then passed within three or four feet of him on the way back to the truck. Cozart stated that he did not climb the pole and did not walk past Johnson just before starting the truck. Johnson's boss, Chumley, testified that his best recollection was that Cozart did climb the pole,

but that he did not remember and would not say he did. With the testimony thus conflicting, petitioners called Watson, an ostensibly disinterested witness, who corroborated Cozart's testimony that he did not climb the pole. The jury found in Cozart's favor that he was not aware of Johnson's presence and did not fail to keep a proper lookout.

Watson's credibility was thus a vital point in the case. In the recording of the purported conversation between Blakey and Watson, the latter stated several times that Cozart did climb the pole as contended by respondent. This is the evidence which was kept from the jury when the trial court excluded Blakey's testimony. Watson could not recognize his voice on the recording and stated flatly that he did not make any of the statements contained in the recording.

Although Blakey was in the courtroom during part of the trial, the undisputed evidence shows that he did not hear Watson testify. The testimony he did hear had no bearing whatsoever upon the evidence which respondent sought to elicit from him. The fact that he had heard some of the witnesses was thus utterly irrelevant to a determination of whether he should be permitted to identify the tape recording. Blakey's presence in the courtroom clearly did not enable him to shape his testimony to better advantage, because he did not hear Watson and no other witness touched even remotely upon the facts concerning which he was to be interrogated.

The facts here are somewhat similar to those in Johnson v. Cooley, 30 Tex.Civ.App. 576, 71 S.W. 34 (no writ), although that was a stronger case for excluding the evidence. There the witness who had not been placed under the rule was told by the defendant of the testimony given by the plaintiff on one issue. The trial court refused to allow the witness to testify, but the Court of Civil Appeals held that this was an abuse of discretion and said:

> "The information given the witness by the appellant as to the testimony of

plaintiff could only have affected the testimony of the witness upon one of the points in issue between the parties, and the testimony of this witness was vitally material to the appellant upon all of the issues in the case. He alone knew the exact details of the transaction under investigation, and could give the amounts for which the property sold, and the items of expense in handling the property and making the sales. There being no other source from which this evidence could be supplied, his testimony should not have been excluded on this point, at least. The evidence in the case as to the amounts for which the property sold, and the expenses of making such sale, is of the most indefinite and uncertain character, and the exclusion of this testimony was manifestly injurious to appellant."

Courts are usually more inclined to uphold the action of the trial court in excluding the testimony of a witness who has violated the rule where the party calling the witness was at fault in causing or permitting the violation and the excluded evidence is not vital to such party's case but merely cumulative in nature. It has already been pointed out that Blakey's testimony and the tape recording he would have identified were crucial to respondent's case. If respondent or his attorney was guilty of any indiscretion, their only mistake was in failing to swear Blakey as a witness or keep him out of the court room at a time when Watson had not appeared or been called as a witness, was not under subpoena, and there was no reason to believe that he would deny his statements recorded on the tape. Unless the power to exclude the testimony of a witness may be used merely as a punitive weapon to penalize a party for lack of foresight, it seems to me that there is no basis whatsoever for refusing to allow Blakey to identify the tape recording.

So far as I have been able to determine, this is the first Texas case to condone the

exclusion of testimony for a violation of the rule where it appears: (1) that the excluded testimony was vital to the case of the complaining party; and (2) that the excluded testimony could not possibly have been affected by the fact that the rule was violated or the witness was not placed thereunder; and (3) that the complaining party did not connive in the violation in an attempt to "educate" the witness and thus gain some advantage at the trial. In my opinion the exclusion of Blakey's testimony was clearly erroneous, and the error was reasonably calculated to and probably did cause the rendition of an improper judgment. I would affirm the judgment of the Court of Civil Appeals.

CALVERT, C. J., joins in this dissent.